IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 18-00088-KD-N |
| | ) | |
| BETTYE CLEMENTS HAYS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This action is before the Court on Defendant Bettye Clements Hays' "Motion to Reconsider Reduction in Sentence or Immediate Release" (doc. 82), which the Court construes as a successive motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)[1] and the United States' response (doc. 86). Upon consideration, and for the reasons set forth herein, the motion for compassionate release is dismissed without prejudice.[2]

I. Background

In 2018, Betty Clements Hays pleaded guilty to Count One of the Indictment which charged conspiracy to commit wire fraud (doc. 56). On May 3, 2019, she was sentenced to a term of 70 months. She was instructed to surrender for service of her sentence at the institution designated by the Bureau of Prisons. Hays is now incarcerated at Federal Correctional

---

[1] United States v. Mederos-Jimenez, 748 Fed. Appx. 289, 290 (11th Cir. 2019) ("Our Circuit precedent says district courts have jurisdiction to entertain successive motions for a sentence reduction if the district court denied the initial motion for a sentence reduction. We therefore construe Mederos-Jimenez's motion for reconsideration as a successive § 3582(c) motion.") (citing United States v. Caraballo-Martinez, 866 F.3d 1233, 1245–47 (11th Cir. 2017)).

[2] To the extent that Hays' motion could be construed as a motion for release to home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No.116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621), the motion is DENIED. The CARES Act does not give the federal courts authority to direct the Bureau of Prisons to allow a prisoner to serve their sentence on home confinement.

Institution Aliceville in Aliceville, Alabama.  According to her motion, she is housed at the Satellite Prison Camp at FCI Aliceville. Her release date is May 15, 2024.

Previously, the Court dismissed Hays' motion for early release (doc. 56). The Court found Hays did not provide any evidence that she met either of the two statutory procedural prerequisites for filing a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)((i). Specifically, there was no evidence she exhausted her administrative remedies with the BOP or that she made a request for compassionate release to the Warden and 30 days had lapsed before she filed her motion in this Court.  The Court also made an alternative decision on the merits of Hays' claim and found that her motion was due to be denied.

II. Exhaustion

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]" 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

Hays argues that she meets the statutory prerequisite for filing her motion.  She asserts that the Warden "received a request and did not act" in "Late 2019 and again in February and March 2020" (doc. 82, p. 1). The United States argues that Hays has not met the statutory exhaustion prerequisites for filing a § 3582(c)(2) motion (doc. 86, p. 6).  The United States points out that the emails are not proof that Hays' administrative remedies have been exhausted

or that the Warden has considered and denied her request for compassionate release, but instead indicate that she has attempted to comply with the necessary procedures.

Hays attached several emails in support of her motion. The earliest is dated March 29, 2020, wherein Hays wrote to the Warden: "Ms. Bradley I had asked you months ago for a form for compassionate release. You directed me to Ms. Bell for a form.  I went to her open house. She was not aware of a form or application. Now can you direct me further…." (doc. 82, p. 6). The Warden responded "Ms. Hayes, Please schedule a time to address your questions regarding the Compassionate Release process with your Case Manager." (Id.).  These emails do not indicate that the Warden received a request from Hays, but instead, indicate that Hays was trying to obtain a form to make the request.

The next email is dated April 10, 2020.  Hays wrote "Ms. Jenkins, I'm looking for 2 requests I sent to Ms. Bradley for Compassionate Release requests.  The first was at the end of the year last year. The other was in February I'm thinking. It's over the allotted time to view or print. It's my understanding you can retrieve them.  . . .  I just need copies of them. . . ." (doc. 82, p. 7). In response, Hays received an email from "Ms. Bell" on April 11, 2020, who wrote "Ms. Hays please send me your release information and how you plan to travel home.  I will call you in next week to sign your paperwork due to Covid-19." (Id.).  The next email is dated April 20, 2020, Hays again writes to "Ms. Jenkins" as follows "I am in serious need of that receipt I ask you for on Compassionate Release that I wrote to Ms. Bradley.  Please pull it up for me and forward it to me."  (Id., p. 8).  At some point before she signed and mailed her motion on April 23, 2020, Hays wrote "No reply as of yet" on the bottom of the email.

These emails do not provide evidence that Warden Bradley received a request for compassionate release, but instead indicate that Hays was inquiring about the request for forms –

"I'm looking for 2 requests I sent to Ms. Bradly for Compassionate Release requests".  In other words, the emails do not indicate that Hays sent a request for compassionate release to the Warden or the staff, but instead sent a request for the form for compassionate release.  Again, there is no evidence that Warden Bradley, Ms. Bell, or Ms. Jenkins received a request for compassionate release and that 30 days lapsed since that receipt, or that Hays exhausted her administrative remedies with the BOP.  Since Hays failed to comply with either of the two statutory requirements, the Court finds that she has not met the necessary prerequisites for consideration of her motion.  Accordingly, Hays' motion is dismissed for failure to meet the statutory procedural prerequisites.

 III. Compassionate release

 However, assuming that Hays met the statutory procedural requirements, she is not entitled to compassionate release based upon the information before the Court.  Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same).  Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, - - - Fed. Appx. - - -, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

 The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the court finds that "extraordinary and compelling reasons warrant such a reduction" and the

reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute.  Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act, the Sentencing Commission promulgated the following policy statement:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; or . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.[3]

---

[3] Subparagraph(B) provides for consideration of compassionate release if "[t]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]"   Since Hays is 62 years old, this statute cannot apply to her.

The Application Notes to the Policy Statement include four examples of extraordinary and compelling reasons to consider reduction of a sentence under § 3582(c)(1)(A).  The defendant's physical, mental, or medical condition may qualify if certain criteria are met. U.S.S.G. § 1B1.13 cmt. n. 1(A). Specifically, if the

> i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

> (ii) The defendant is—

>> (I) suffering from a serious physical or medical condition,

>> (II) suffering from a serious functional or cognitive impairment, or

>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. §1B1.13 cmt. n. 1(A).

Hays does not allege that she is terminally ill, or that she has serious functional or cognitive impairment, or that she is experiencing deteriorating physical or mental health because of the aging process such that she cannot care for herself in prison.  Hays does allege that she has hypertension, coronary artery disease, a heart stent, and anemia (doc. 82, p. 1).  Hays' medical conditions may fall within the criteria of Application Note A, if she shows that she is "suffering from a serious . . . medical condition . . . that substantially diminishes" her ability to provide self-care in the correctional facility. U.S.S.G. §1B1.13 cmt. n. 1(A). Hays states that her conditions are not treated properly by the prison staff.  However, Hays does not provide any evidence as to

the seriousness of these conditions or that they affect her ability to care for herself in prison. [4]

See United States v. Crawford, 2019 WL 6615188, at *5 (M.D.N.C. Dec. 5, 2019) (finding that Crawford's "medical records reveal a variety of ailments, including Hepatitis C, carpal tunnel syndrome, hypertension, esophageal reflux, urinary tract infection, and osteoarthrosis for which he has received extensive treatment" but Crawford did not demonstrate that "any of his illnesses have substantially diminished his ability to care for himself while incarcerated in the BOP").

The district court may consider the "Age of the Defendant." U.S.S.G. § 1B1.13 cmt. n.1(B).  Specifically, whether the "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id., cmt. n. 1(B).  Since Hays is 62 years old, she does not fall within the parameters of this example. Also, she has served approximately a year of her 70-month sentence, which is not 75% of her term of imprisonment

The district court may consider Hays' "Family Circumstances." Id., at cmt. n. (1)(C). Specifically, "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" and "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.". Id. Hays does not argue that her family circumstances fall within the criteria of this example.

---

[4] The Bureau of Prison's Program Statement No. 5050.50 addressing "Compassionate Release/Reduction in Sentence" Procedures for Implementation of 18 U.S.C. §§ 3582 and 42059g)" identified a "Debilitated Medical Condition" and states that a reduction in sentence "consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:  Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."

Last, the district court may consider "Other Reasons" if "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id., cmt. n. (1)(D). Since Hays does not fall within the parameters of (A) through (C), her request must fall under subparagraph (D).

In its present version, subparagraph (D) "leaves identification of other 'extraordinary and compelling reason[s]' to the Director of the Bureau of Prisons." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at * 3 (D. Me. July 11, 2019). But now that the First Step Act allows the inmate to file for compassionate release without the BOP's support, it is unclear what "other reason" can be relied upon for compassionate release. However, the Court finds that until the Sentencing Commission amends its Policy Statement "those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." United States v. Fox, 2019 WL 3046086, at *3.

Hays argues that "Covid 19 is a serious and urgent health crisis especially for somebody who already has serious health problems which have never been treated properly" in prison (doc. 82, p. 4). Hays asserts that her improperly treated hypertension, coronary artery disease, heart stent, and anemia, combined with her age, and risk of exposure to Covid 19 due to crowded prison conditions,[5] constitute extraordinary and compelling reasons for compassionate release.

---

[5] Hays is currently housed at the Satellite Prison Camp (SPC) at FCI Aliceville. Hays alleges that the BOP and SPC have failed to provide safe living quarters. Specifically, she alleges that the SPC prison staff are not following CDC guideline. Specifically, the inmates are housed in crowded living areas which prevent social distancing; staff does not take inmate temperatures daily; staff have falsely stated that safety measures are in place; and falsified forms regarding Covid 19 symptoms. She also alleges that prison staff have not repaired a broken air conditioner; routinely allow inmates to leave their units to work in other areas of the SPC and FCI, possibly bringing Covid 19 back to their units, and allow truck drivers to bypass the temperature checkpoint and interact with inmates at the warehouse. She also alleges that SPC

The United States argues that Hays has not met her burden to establish that she is entitled to compassionate release (doc. 86).  The United States argues that while Hays' second motion contains more detail, she still has not demonstrated that the possibility she may contract Covid-19, or her generalized concern,[6] "constitutes an 'extraordinary and compelling reason' for which she should be released after serving only 15% of her 70 month sentence" (doc. 86, p. 7-8).

As of June 25, 2020, no inmates at FCI Aliceville were positive for Covid 19.  One staff member was positive, and ten inmates and nine staff had recovered.  No deaths were reported. https://www.bop.gov/coronavirus/  (last revised June 25, 2020).  The potential for Hays' to contract Covid 19 because of close living conditions and documented Covid 19 cases at FCI Aliceville[7] in combination with serious medical conditions which elevate her risk of serious illness or mortality, may be comparable or analogous to the criteria identified in the Policy Statement.  The Center for Disease Control and Prevention has found that persons of any age "are at increased risk for severe illness from Covid-19" if they have "serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies" https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

---

and FCI Aliceville are understaffed and prison staff is rotated between the two locations.  She also alleges that the Warden is removing healthy inmates from SPC and taking them to FCI Aliceville where they are exposed to Covid 19.  Hays states there are seven confirmed inmate cases and four confirmed staff cases at FCI Aliceville. (doc. 82, p. 2-3).

[6] The United States pointed out that as of May 27, 2020, there were six cases of Covid-19 at FCI Aliceville, comprised of one inmate and six staff members.  The United States asserts that this is a low number in a facility that houses 1,351 inmates at FCI Aliceville including 194 inmates at the SPC where Hays is serving her sentence (doc. 86, p. 8).

[7] "The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices." United States v Bueno-Sierra, No. 93-CR-00567, 2020 WL 2526501, at *2 (S.D. Fla. May 17, 2020)

conditions.html (last revised June 25, 2020).  The CDC has also found that persons of any age "might be at an increased risk for severe illness from Covid-19" if they have hypertension or high blood pressure or their immune system is compromised. People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last revised June 25, 2020).

However, Hays has not provided the Court with any evidence to support her statement that her medical conditions are improperly treated or any evidence to show that they are of such seriousness or severity that she is or might be at an increased risk of severe illness should she contract Covid 19.  Moreover, the BOP is in a better position to evaluate Hays' risks either when the Warden receives her request for compassionate release or she exhausts her administrative remedies within the BOP, one of which she must do before this Court may consider her motion for compassionate release.  See Bureau of Prisons Program Statement 5050.50, Compassionate Release/Reduction in Sentence, Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), January 17, 2019; 28 C.F.R. § 571.61 ("Initiation of request – extraordinary or compelling circumstances").

**DONE** and **ORDERED** this 6th day of July 2020.

s / Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**